**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KAREN CLIFTON, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 10-CV-936 |
| BOROUGH OF EDDYSTONE and | : | |
| OFFICER JOSEPH PRETTI, | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM AND ORDER

**Joyner, C.J.**                                        **October** 5, **2011**

        Before the Court is Defendants' Motion for Summary Judgment
(ECF No. 11).  For the reasons set forth in this Memorandum, the
Defendants' Motion is GRANTED in part and DENIED in part.

### I. BACKGROUND

        Officer Joseph Pretti is a police officer for the Borough of
Eddystone, Pennsylvania (collectively "Defendants").  On
September 15, 2007, shortly before 4:00 pm, Officer Pretti was
patrolling the Eddystone Crossing Shopping Center in his police
cruiser when he noticed several cars parked in the fire lane.
The fire lane runs parallel to a concrete walkway separating the
roadway from the storefronts.  Officer Pretti parked his cruiser
behind a car in which Karen Clifton ("Plaintiff") was seated in
the back seat.  Plaintiff's daughter, Kelly, had parked the car
in the fire lane while she and a friend went into a store to
shop.  Officer Pretti did not activate his police lights or

1

sirens and did not get out of his car.  Plaintiff noticed Officer
Pretti's presence and exited the car, walked up to the door to
the beauty supply store and told her daughter to move the car.
Although the parties dispute what happened next, they agree that
Ms. Clifton uttered "you asshole Eddystone mother-fucking cop."
Officer Pretti arrested Ms. Clifton for disorderly conduct, 18
Pa. Cons. Stat. Ann. § 5503 (West 2000).  Shortly before 4:00 pm,
Ms. Clifton was handcuffed, placed in the back of Officer
Pretti's cruiser and transported to the Ridley Township Police
Department.  At approximately 7:30 pm, Plaintiff was transported
to the Eddystone Police Department, cited for disorderly conduct
and released from custody.

Plaintiff commenced the present action against Officer
Pretti under 42 U.S.C. § 1983, alleging the following
constitutional violations: First Amendment retaliatory arrest and
prosecution, Fourth Amendment false arrest and imprisonment,
Fourth Amendment excessive force, and Fourth Amendment malicious
prosecution.[1]  Additionally, Plaintiff states a malicious
prosecution claim against Officer Pretti under Pennsylvania
common law.  Plaintiff also asserts a § 1983 claim against the

---

[1]Although Plaintiff does not expressly state a claim under the
Fourteenth Amendment, the Court presumes Plaintiff asserts her First and
Fourth Amendment claims as incorporated under the Fourteenth Amendment.  See,
e.g., McDonald v. City of Chicago, 130 S.Ct. 3020, 3034 n.12 (2010).
Likewise, for the sake of simplicity, the Court's discussion of Plaintiff's
First and Fourth Amendment rights presumes the application of those rights as
incorporated via the Fourteenth Amendment.

Borough of Eddystone ("Eddystone") for municipal liability for First and Fourth Amendment violations.

## II. STANDARD OF REVIEW

Upon considering a motion for summary judgment, the Court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making a determination, "inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (alteration in original) (internal quotation marks omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . pleading; its response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (alteration in original) (internal quotation marks omitted).

Where, as here, the nonmovant does not respond to a motion for summary judgment, the Court will grant the motion if the

movant is entitled to it as a matter of law.[2]  See Fed. R. Civ.
P. 56(e)(3).  The movant, however, is not entitled to summary
judgment simply because the nonmovant did not oppose the motion.
See E.D. Pa. R. Civ. P. 7.1(c); Anchorage Assocs. v. Virgin
Island Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990).  The
Court may treat the facts asserted by Defendant as undisputed.
See Fed. R. Civ. P. 56(e); Anchorage, 922 F.2d at 175.  Where the
movant identifies facts to establish no genuine issue of material
fact exists, and the nonmovant has the burden of persuasion, the
nonmovant must identify those facts of record which would
contradict the movant's facts.  See Childers v. Joseph, 842 F.2d
689, 694-95 (3d Cir. 1988).  "[T]he burden is on the [non-
movant], not the court, to cull the record and affirmatively
identify genuine, material factual issues sufficient to defeat a
motion for summary judgment."  Longo v. First Nat'l Mortg.
Sources, Civ. No. 07-4372 (MLC), 2009 WL 313334, at *3 (D.N.J.
Feb. 6, 2009) (alteration in original) (internal quotation marks
omitted).

---

[2] Plaintiff was granted three time extensions to file an opposition
memorandum to Defendants' motion for summary judgment.  (ECF Nos. 14, 16, 17.)
Upon the Court's third order extending time, the Court advised Plaintiff there
would be no further extensions granted.  Nonetheless, Plaintiff failed to file
an opposition to Defendants' motion.  Seven days after the deadline to file a
response, Plaintiff's counsel filed a document consisting of what appears to
be an incomplete statement of facts and no legal arguments.  Over the next few
months, Plaintiff's counsel sent letters to the Court describing his
overwhelming workload and promised to submit a opposition memorandum, which
was never received.  In light of the fact that Plaintiff's counsel never filed
a timely and complete memorandum, the Court must consider Defendants' motion
unopposed.

### III. DISCUSSION

<u>A. Plaintiff's § 1983 Claims Against Officer Pretti</u>

Plaintiff alleges several violations of her rights under the First and Fourth Amendments and seeks relief under 42 U.S.C. § 1983. Officer Pretti raised the affirmative defense of qualified immunity in his answer to the complaint. A state official with qualified immunity has no civil liability for discretionary conduct so long as he does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). Whether Officer Pretti has qualified immunity is a two-part inquiry. The Court must determine whether the plaintiff has shown facts that make out a constitutional rights violation and if so, whether those rights were "clearly established" at the time of the incident. <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009). The Court conducts the two-part qualified immunity inquiry for each of Plaintiff's claims, in turn.

*1. Fourth Amendment Seizure[3]*

Officer Pretti arrested Plaintiff under Pennsylvania's disorderly conduct statute, which states in pertinent part:

---

[3]False arrest and false imprisonment are both injuries arising from the same Fourth Amendment injury, i.e. an unreasonable seizure. False arrest is a "species" of false imprisonment and they can both be considered one tort. <u>See</u> <u>Wallace v. Kato</u>, 549 U.S. 384, 388-89 (2007). In this case, Plaintiff's arrest and subsequent three-and-a-half-hour confinement are one ongoing seizure. The Court hence analyzes Plaintiff's claims of false arrest and false imprisonment together.

> A person is guilty of disorderly conduct if, with intent
> to cause public inconvenience, annoyance or alarm, or
> recklessly creating a risk thereof, he:
> (1) engages in fighting or threatening, or in violent or
> tumultuous behavior;
> (2) makes unreasonable noise;
> (3) uses obscene language, or makes an obscene gesture;
> or
> (4) creates a hazardous or physically offensive condition
> by any act which serves no legitimate purpose of the
> actor.

18 Pa. Cons. Stat. Ann. § 5503(a).  According to Plaintiff's recollection of the incident, she stepped out of her daughter's car, which was parked in the fire lane, crossed the adjacent walkway, opened the door to a beauty supply store, and from the doorway informed her daughter that she needed to move her car out of the fire lane.  (Def.'s Mot. Ex. A, at 85-87.)  As Ms. Clifton walked back to the car, she alleges that she uttered "you asshole Eddystone mother fucking cop" under her breath at the "slightest whisper."  Id. at 92, 94.  Plaintiff stated that although the parking lot was full of cars, no one was present at or near the area where she made the statement and Officer Pretti was still seated in his car.  Id. at 131.  Officer Pretti's recollection varies substantially.  He recalls the walkway and area around Ms. Clifton being crowded with pedestrians.  (Def.'s Mot. Ex. C, at 20, 44.)  Officer Pretti alleges that Ms. Clifton was "cursing at [him] at the top of her lungs" and caused several passers-by to walk into the street to avoid her.  Id. at 20-21.  According to Officer Pretti, he arrested Ms. Clifton after she refused to

comply with his orders to cease and desist.  Id.  From the time
of her arrest to the time of her release, Ms. Clifton was in
custody for approximately three-and-a-half hours.  (Def.'s Mot.
Ex. A, at 135.)

An arrest is lawful under the Fourth Amendment only if it is
supported by probable cause.  See, e.g., Johnson v. Campbell, 332
F.3d 199, 211 (3d Cir. 2003).  The dispositive issue is not
whether Plaintiff actually committed the offense but whether
Officer Pretti had probable cause to believe Plaintiff committed
the offense at the time he arrested her.  See Dowling v. City of
Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988); see also Michigan
v. DeFillippo, 443 U.S. 31, 36 (1979) ("the mere fact the suspect
is later acquitted of the offense for which he is arrested is
irrelevant.").  Probable cause is a question of fact for the jury
to decide, Groman v. Township of Manalapan, 47 F.3d 628, 635 (3d
Cir. 1995), but Defendants contend that viewing all the evidence
in favor of Plaintiff, probable cause existed as a matter of law.

Probable cause is present where an officer has a sufficient
basis to make a "practical, common sense" decision that a "fair
probability" of criminal activity exists.  Illinois v. Gates, 462
U.S. 213, 238 (1983).  The inquiry is whether "facts and
circumstances within the officer's knowledge [] are sufficient to
warrant a prudent person, or one of reasonable caution, in
believing, in the circumstances shown, that the suspect has

7

committed, is committing, or is about to commit an offense."
DeFillippo, 443 U.S. at 37.  If the arrest was effected without
probable cause, it would violate Plaintiff's Fourth Amendment
protection against unreasonable seizures.

The factual record is unclear as to which part of the
statute Plaintiff's arrest is based.  Defendants argue in their
motion probable cause exists under the obscene language
provision, 18 Pa. Cons. Stat. Ann. § 5503(a)(3).  (Def.'s Mot.
10-15).  On the other hand, Officer Pretti's citation designates
the basis for arrest as both obscene language and creating a
"hazardous or physically offensive condition," § 5503(a)(3), (4).
(Def.'s Mot. Ex. D.)  The magistrate adjudged Plaintiff not
guilty, citing only the "hazardous or physically offensive
condition" provision, § 5503(a)(4).  (Compl. Ex. C.)  Regardless
of which part of the statute is alleged to be violated, Plaintiff
cannot prevail on her claim if Officer Pretti had probable cause
to arrest her for any offense at the time.  See Reedy v. Evanson,
615 F.3d 197, 211 (3d Cir. 2010) ("Probable cause need only exist
as to [one of the] offense[s] that could be charged under the
circumstances." (alterations in original) (internal quotation
marks omitted)), cert. denied, 131 S. Ct 1571 (2011).  Therefore,
the Court must consider whether probable cause existed to arrest
Plaintiff for violating any provision of the disorderly conduct
statute.

a. Obscene Language

For the purposes of defining obscene language, the Pennsylvania courts adopted the test for obscenity articulated by the Supreme Court in <u>Miller v. California</u>, 413 U.S. 15 (1973). <u>Commonwealth v. Kelly</u>, 758 A.2d 1284, 1286 (Pa. Super. Ct. 2000). The <u>Miller</u> test delineates three requirements:

> (a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest;
> (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and
> (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

413 U.S. at 24 (internal quotation marks and citations omitted). Plaintiff's statement, although vulgar and coarse, is not obscene. In this context, it reasonably appears that Plaintiff was attempting to ridicule, offend and insult Officer Pretti but her statement did not appeal to prurient interests, that is, it is not sexual in nature. <u>See</u> <u>Tate v. W. Norriton Twp.</u>, 545 F. Supp. 2d 480, 487 (E.D. Pa. 2008) (holding the statement "she needs f___ing help!" and "what, the f-k word?" were "emphatic, coarse, and disrespectful" but not obscene); <u>Brockway v. Shepherd</u>, 942 F. Supp. 1012, 1016 (M.D. Pa. 1996) ("using a base term for sex does not change the disrespectful, offensive

9

communication into one that appeals to the prurient interest.").

The most analogous case to the circumstances at hand occurred in Commonwealth v. Kelly, 758 A.2d 1284 (Pa. Super. Ct. 2000). A highway construction worker approached a motorist whose car was idling next to the work area. Id. at 1285. When the worker inquired about the motorist's intentions, the motorist retorted, "[f]uck you, asshole" and gestured by extending his middle finger. Id. The court ruled that the motorist's expressions were not obscene but instead "angry words and an angry gesture having nothing to do with sex." Id. at 1288. Plaintiff, ostensibly taking issue with Officers Pretti's decision to park behind her daughter's vehicle, stated similar vulgarities. Although the language she chose to use was not identical to the motorist's words in Kelly, the differences are too insignificant to qualify Plaintiff's language as obscenity. Therefore, Officer Pretti did not have probable cause to arrest Plaintiff for using obscene language.

b. Hazardous or Physically Offensive Conditions

Plaintiff's disorderly conduct citation indicates her arrest was also based on creating a "hazardous or physically offensive condition" under § 5503(a)(4). A hazardous condition is one that "involves danger or risk," particularly situations raising the

10

possibility of injuries from public disorder.  Commonwealth v. Williams, 574 A.2d 1161, 1164 (Pa. Super. Ct. 1990).  Because the Court must assume the facts most favorable to the plaintiff, the Court cannot find, as a matter of law, that Ms. Clifton created a hazardous condition.  Whispering vulgarities while walking alone on a walkway, while Officer Pretti sat in his car, does not create a danger or risk of injury from public disorder.  Nor can the Court conclude Plaintiff created a physically offensive condition.  There was no affront to the physical senses of the public or an invasion of the physical privacy of another.  See id. ("A defendant may create such a [physically offensive] condition if she sets off a 'stink bomb', strews rotting garbage in public places, or shines blinding lights in the eyes of others.")  A reasonable jury could find that Officer Pretti did not have probable cause to arrest Plaintiff under § 5503(a)(4).

c. Fighting Words

The "fighting words" provision of Pennsylvania's disorderly conduct statute sanctions an individual who "engages in fighting or threatening, or in violent or tumultuous behavior."  18 Pa. Cons. Stat. Ann. § 5503(a)(1).  Fighting words "by their very utterance inflict injury or tend to incite an immediate breach of peace."  Victory Outreach Ctr. v. Melso, 313 F. Supp. 2d 481, 491 (E.D. Pa. 2004) (quoting Commonwealth v. Hock, 728 A.2d 943, 946 n.3 (Pa. 1999)).  "'[P]rofane' words alone, unaccompanied by any

evidence of violent arousal, are not 'fighting words' and are therefore protected speech." Id.  Under Plaintiff's account of the incident, her coarse remarks were barely audible and spoken while she walked back to her daughter's car.  Furthermore, Plaintiff alleges Officer Pretti was still seated in his car and no one else was around to hear her words.  In these circumstances, Plaintiff did not utter fighting words. See Hock, 728 A.2d at 416 (concluding that "F___ you, a_____" were not fighting words when uttered in a normal tone of voice while walking away from a police officer).  A genuine issue of material fact exists as to whether Officer Pretti had probable cause to arrest Plaintiff for using fighting words.

d. Qualified Immunity

Even if Officer Pretti did not have probable cause to arrest Plaintiff, he may be protected by qualified immunity.  Having found that a reasonable jury could conclude Plaintiff's Fourth Amendment rights were violated by her arrest, the Court must now consider whether her rights were "clearly established" at the time of the incident. Pearson, 555 U.S. at 232.  For Plaintiff to survive a motion for summary judgment, she bears the initial burden to prove Defendants violated some clearly established right. See Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997).  A right is clearly established when "a reasonable official would understand that what he is doing violates that

right." McLaughlin v. Watson, 271 F.3d 566, 571 (3d Cir. 2001).
"The plaintiff need not show that the very action in question was
previously held unlawful, but needs to show that in light of
preexisting law the unlawfulness was apparent." Id.

Assuming the facts most favorable to Plaintiff, a reasonable
officer would understand that arresting Plaintiff would violate
clearly established law. As the Court has already explained, the
relevant precedent makes clear that a citizen cannot be lawfully
arrested for disorderly conduct under the circumstances alleged
by Plaintiff. See supra Parts III.A.1.a-.c. Whether "words or
acts rise to the level of disorderly conduct hinges upon whether
they cause or unjustifiably risk a public disturbance." Hock,
728 A.2d at 946. Plaintiff describes a situation in which she
whispered vulgar and insulting remarks concerning Officer Pretti
but no one but Officer Pretti was around to hear them. Although
Plaintiff admits she was angry, she alleges no physical
intimations of hostility and contends Officer Pretti was still
seated in his police cruiser. These facts are inapposite to the
cases finding defendants culpable of disorderly conduct, all of
which include some risk of public turmoil. See, e.g., Egolf v.
Witmer, 526 F.3d 104 (3d Cir. 2008). To the contrary, the
analogous case law indicates Plaintiff's rights were clearly
established. See Tate v. W. Norriton Twp., 545 F. Supp. 2d 480
(E.D. Pa. 2008); Victory Outreach Ctr. v. Melso, 313 F. Supp. 2d

13

481 (E.D. Pa. 2004); <u>Brockway v. Shepherd</u>, 942 F. Supp. 1012
(M.D. Pa. 1996); <u>Commonwealth v. Hock</u>, 728 A.2d 943 (Pa. 1999);
<u>Commonwealth v. Kelly</u>, 758 A.2d 1284 (Pa. Super. Ct. 2000);
<u>Commonwealth v. Williams</u>, 574 A.2d 1161, 1164 (Pa. Super. Ct.
1990).  Thus, it is clear there is "sufficient precedent at the
time of action, factually similar to the plaintiff's allegations,
to put defendant on notice that his or her conduct is
constitutionally prohibited."  <u>McLaughlin</u>, 271 F.3d at 572.

The cases cited by Defendants do not squarely address the
right at issue, that is, the right of Plaintiff to utter
disparaging remarks about a police officer absent the risk of
public turmoil.  Defendants rely on three cases for substantive
support: <u>L. v. Boyertown Area School District</u>, Civ. No. 08-5194,
2009 WL 1911621 (E.D. Pa. July 1, 2009), <u>Shotko v. City of
Wilkes-Barre</u>, No. 3:08cv626, 2009 WL 1324035 (M.D. Pa. May 11,
2009), and <u>Cherry v. Garner</u>, No. Civ. A. 03-CV-01696, 2004 WL
3019241 (E.D. Pa. Dec. 30, 2004).

First, in <u>L.</u>, the court found probable cause where a
tempestuous sixth grader called his disability aide a "fucking
bitch" in the lunchroom while he was eating with his friends.
2009 WL 1911621, at *2.  The distinguishing factor in <u>L.</u> though,

was that the student uttered his invective in front of a crowd of his peers.[4]

Next, the court in <u>Shotko</u> found probable cause to arrest a political protester for disorderly conduct.  2009 WL 1324035, at *2 n.2.  While walking on the sidewalk during a holiday parade, a police officer ordered the plaintiff to stop walking.  <u>Id.</u> at *1.  Shotko rebuffed the officer and demanded justification for the order.  <u>Id.</u>  The plaintiff then told the police to "fuck off."  <u>Id.</u> at *4.  Again, the distinctive factor in <u>Shotko</u> was that the statement was spoken amongst a crowd of onlookers.  Furthermore, Shotko rebuked a police officer who issued a direct order, thus raising the risk of a public disturbance.

Finally, in <u>Cherry</u>, a hostile parent confronted a police officer in a schoolyard, pointed her finger at the officer and

---

[4]The court did not analyze probable cause in detail; the discussion of probable cause is cabined to a single footnote.  Defendants quote the propositions from that footnote: "Profane language aimed at public officials has been the basis for writing disorderly conduct citations in many instances" and "it is clear from these cases that the issuance of a citation for use of such profane language is supported by probable cause."  <u>L.</u>, 2009 WL 1911621, at *4 n.6.  Although the Court agrees with the former proposition in general, the court in <u>L.</u> was considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and found ample support to grant the motion on other grounds.  <u>Id.</u> at *2-4.  It is not entirely clear that the court in <u>L.</u> had the opportunity to "analyze the right with specificity" as courts have done when considering qualified immunity on a summary judgment motion.  <u>Doe v. Groody</u>, 361 F.3d 232, 243 (3d Cir. 2004).  As primary support for the latter proposition in footnote 6, the court in <u>L.</u> cited <u>Commonwealth v. Hock</u>, 696 A.2d 225 (Pa. Super. Ct. 1997) but this opinion was subsequently overruled by the Pennsylvania Supreme Court.  <u>See</u> <u>Commonwealth v. Hock</u>, 728 A.2d 943 (Pa. 1999).  The only other case cited in support of the proposition is <u>Commonwealth v. Pringle</u>, 450 A.2d 103 (Pa. Super. Ct. 1982), a nearly 30 year old case that has been repeatedly called into doubt.  <u>See</u> <u>Commonwealth v. Bryner</u>, 652 A.2d 909 (Pa. Super. Ct. 1995); <u>United States v. McDermott</u>, 971 F. Supp. 939 (E.D. Pa. 1997); <u>see also</u> <u>Commonwealth v. Fenton</u>, 750 A.2d 863, 869-72 (Pa. Super. Ct. 2000) (Brosky, J. concurring) (discussing <u>Fenton</u> line of cases and their divergence from <u>Pringle</u>).

shouted: "Motherfucker, you are going to have to leave me alone!" 2004 WL 3019241, at *1-2.  The court upheld a finding of probable cause, due in part to the presence of small children at the scene of the altercation.  Id. at *9.  Thus the circumstances in Cherry contrast with the circumstances alleged by Plaintiff.

Although all three cases cited by Defendants are similar to the case at hand in one respect--they all involve plaintiffs who used similarly vulgar words to disparage public officials--they differ from the facts alleged by Plaintiff.  The offensive language in L., Shotko, and Cherry was coupled with a risk of public disturbance that is lacking in Plaintiff's case.  Cases such as Hock, 728 A.2d 943, and Kelly, 758 A.2d 1284, clearly establish that probable cause does not exist to arrest an individual for using language, no matter how boarish and vulgar, in the presence of a police officer where there is no risk of public turmoil.  Therefore, Officer Pretti is not entitled to qualified immunity and a jury could reasonably find that Plaintiff's arrest violated her Fourth Amendment protections against unreasonable seizure.  Summary judgment is denied to this claim.[5]

---

[5]To the extent the parties distinguish between false arrest and false imprisonment, summary judgment is denied to both claims.  See Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995) ("where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." (citing Thomas v. Kipperman, 846 F.2d 1009, 1011 (5th Cir. 1988))).

*2. First Amendment Retaliation*

Plaintiff contends that Officer Pretti arrested and prosecuted her in retaliation for her expression of constitutionally protected speech.  A First Amendment retaliation claim requires Plaintiff to allege three elements: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.  Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006) (quoting Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.2003)).

a. Constitutionally Protected Conduct

As the Court ruled above, Plaintiff's expression, under the circumstances she alleges, could not be a valid basis for her arrest.  "[E]xcept for certain narrow categories deemed unworthy of full First Amendment protection-such as obscenity, 'fighting words' and libel-all speech is protected by the First Amendment." Eichenlaub v. Township of Indiana, 385 F.3d 274, 282-83 (3d Cir. 2004) (citing R.A.V. v. St. Paul, 505 U.S. 377, 382-90 (1992)). Under the facts most favorable to Plaintiff, and for the reasons discussed above, Ms. Clifton's statement was neither obscenity nor "fighting words," and Defendants have not suggested it was libelous.  Therefore, a reasonable jury could find that Ms.

Clifton's statement to Officer Pretti was speech protected by the First Amendment.  See City of Houston v. Hill, 482 U.S. 451, 461 (1987) (holding that the First Amendment "protects a significant amount of verbal criticism and challenge directed at police officers.").

b. Retaliatory Action

Plaintiff must allege the government responded with retaliatory action sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights. Plaintiff claims she was arrested by Officer Pretti for her vulgar remarks about him. Plaintiff was removed from her vehicle, handcuffed, and taken to the local jail for several hours.  She was eventually released and given a citation for disorderly conduct.  Plaintiff had to subsequently appear in court for trial, where she was found not guilty.  The effect of the retaliatory conduct "need not be great" to be actionable "but it must be more than *de minimus*."  McKee v. Hart 436 F.3d 165, 170 (3d Cir. 2006) (internal quotation marks omitted). Plaintiff's arrest, detention and prosecution exceeds this low threshold.  See, e.g., McCoy v. Edwards, No. 3:06-CV-1142, 2009 WL 1794749, at *9 (M.D. Pa. June 23, 2009).

c. Causation

Plaintiff has established a causal link between her speech and Officer Pretti's action.  Plaintiff alleges she was arrested moments after making her statement.  Plaintiff contends that after uttering her remark, she proceeded back to her daughter's car, sat down in the back seat, and closed the door.  (Def.'s Mot. Ex. A, at 97.)  Next, Plaintiff states she saw her daughter, Kelly, and her daughter's friend sit down in the front seats of the car and close the doors.  Id. at 98.  Then Plaintiff alleges Officer Pretti removed her from the car and arrested her.  Id. at 98-99.  In Estate of Smith v. Marasco, 318 F.3d 497, 512-13 (3d Cir. 2003), the court found that the passage of up to two days between the protected conduct and retaliatory act could be "unusually suggestive" of a causal link.  Plaintiff was arrested only moments later--within seconds or minutes--and thus a jury could reasonably infer her arrest was caused by her remarks. Furthermore, although Ms. Clifton and Officer Pretti have substantially different recollections of the event, they both agree Ms. Clifton's arrest was caused by her conduct and speech while standing outside of the shopping mall.  Plaintiff has established the requisite elements to sustain her First Amendment retaliation claim.[6]

---

[6]One component of Plaintiff's First Amendment claim is retaliatory prosecution, which carries the specific requirement that Plaintiff plead and prove an absence of probable cause.  Hartman v. Moore, 547 U.S. 250, 265-66 (2006).  As the Court held in its Fourth Amendment analysis, see supra Part

d. Qualified Immunity

The analysis of the qualified immunity doctrine for Plaintiff's First Amendment claim largely overlaps with the Court's analysis of Plaintiff's Fourth Amendment false arrest claim. As the Court thoroughly explained in Part III.A.1 above, a reasonable jury could find Plaintiff's arrest was not supported by probable cause. Furthermore, her speech, as alleged by Plaintiff, was protected under the First Amendment and does not qualify under any of the recognized exceptions to protected speech. The law is clearly established that an individual cannot be arrested in retaliation for her protected speech. See, e.g., Moore v. Valder, 65 F.3d 189, 196 (D.C. Cir. 1995); Losch v. Borough of Parkesburg, 736 F.2d 903, 907-08 (3d Cir. 1984); Pomykacz v. Borough of W. Wildwood, 438 F. Supp. 2d 504, 512 (D.N.J. 2006). Defendants' Motion for Summary Judgment is denied as to Plaintiff's First Amendment claim against Officer Pretty.

*3. Fourth Amendment Excessive Force*

Plaintiff's excessive force claim is based on two different courses of conduct. First, the force by which Officer Pretti apprehended and detained Plaintiff is challenged as excessive.

---

III.A.1, a reasonable jury could find that Plaintiff was arrested without probable cause.

Second, Plaintiff alleges Officer Pretti used excessive force to tighten handcuffs around her wrists.

a. Force Used to Place Plaintiff in Police Custody

Plaintiff alleges she was the victim of excessive force when Officer Pretti arrested her.  Plaintiff claims that while she was seated in rear seat of her daughter Kelly's car, Officer Pretti abruptly opened the door, grabbed Plaintiff by the left wrist and "yanked" her out of the car "with very extreme force."  (Def.'s Mot. Ex. A., at 99-100).  Plaintiff asserts she was then pushed against the trunk of Kelly's car onto her chest and stomach.  Id. at 101.  Officer Pretti then allegedly "yanked" Plaintiffs arms behind her back and "slammed" handcuffs around her wrists.  Id. Plaintiff was then walked over to Officer Pretti's cruiser.  As Plaintiff was bent over, about to sit down in the rear seat, Plaintiff states Officer Pretti pushed her left shoulder, causing her to hit her head on the car's roof.  Id. at 110.  Officer Pretti alleges he arrested Ms. Clifton while she was standing on the walkway and repeatedly shouting vulgar insults at him. (Def.'s Mot. Ex. C, at 42, 45.)  According to Officer Pretti, he arrested Ms. Clifton only after she refused to comply with his order to stop screaming.  Id. at 20-21.  Officer Pretti reports that he placed handcuffs on Ms. Clifton, walked her back to his

police cruiser, and helped her get seated in the back seat.  Id. at 48-49.

An arrest violates the Fourth Amendment when effectuated with excessive force.  See Graham v. Connor, 490 U.S. 386, 394 (1989).  The inquiry is whether "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  Id. at 397 (citing Scott v. United States, 436 U.S. 128, 137-39 (1978)).  Deciding whether the force was reasonable requires a balancing of interests: "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  Id. at 396 (internal quotation marks omitted).  The Court must afford some allowance for police officers who make "split-second judgments" in "tense, uncertain, and rapidly evolving" circumstances.  Id. at 396-97.  Some of the factors to be considered are the severity of the crime at issue, the immediate threat of harm to the officers and others, and the suspect's attempts to resist or escape the arrest.  Id. at 396.  The Third Circuit has delineated additional factors, such as the risk a suspect is violent or dangerous, the duration of the use of force, whether the force was used to effectuate the arrest, the possibility the suspect is armed, and the number of people the officer must contend with at

one time.  Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004)
(citing Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997)).

     The reasonableness of the force used to arrest Plaintiff is
a question of fact.  See Marasco, 318 F.3d at 515-16.  The
possibility that Plaintiff may have been arrested without
probable cause, alone, does not constitute excessive force.  See
Snell v. City of York, 564 F.3d 659, 672-73 (3d Cir. 2009)
(rejecting efforts to "bootstrap" excessive force claims and
probable cause claims).  In light of the facts most favorable to
the plaintiff, a reasonable jury could find that Officer Pretti
used excessive force.  Plaintiff was accused of the relatively
minor offense of disorderly conduct, she did not appear to pose
an immediate threat of harm while seated in a car, and there are
no allegations she resisted or sought to escape arrest.
Furthermore, Plaintiff's behavior did not suggest she was violent
or dangerous, nor that she was armed.  On the other hand, Officer
Pretti appeared to be using force primarily to effectuate the
arrest, although he allegedly pushed Plaintiff once more as she
entered the police cruiser.  The duration of the use of force was
short: about two minutes.  (Def.'s Mot. Ex. A., at 105.)  Under
the circumstances, a reasonable jury could find "yanking"
Plaintiff out of the car and "slamming" her against the trunk of
the car were excessive.  Additionally, the allegation that
Officer Pretti pushed Ms. Clifton while she was handcuffed and

23

obediently getting into the police cruiser could be found to be a gratuitous and flagrant use of force.

Next, the Court must consider the legal question of qualified immunity.  Plaintiff can only prevail on her excessive force claim if a reasonable officer would have known his conduct violated the Fourth Amendment in these circumstances.  See Kopec, 361 F.3d at 777.  "The question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards."  Saucier v. Katz, 533 U.S. 194, 208 (2001).  Qualified immunity operates to "protect officers from the sometimes hazy border between excessive and acceptable force."  533 U.S. at 206 (internal quotation marks omitted).

The circumstances portrayed by Plaintiff placed Officer Pretti in the kind of hazy predicament meant to invoke the protections of qualified immunity.  Although the case law is replete with examples probing the boundaries of excessive force, there is no bright line between acceptable and excessive use of force.  Making an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  Graham, 490 U.S. at 396.  Not every push or shove is excessive force, id. at 396, and even a "gratuitously violent shove" can be tolerable, Saucier, 533 U.S. at 208.  Some of

24

Officer Pretti's actions can reasonably be considered gratuitous and one could question the necessity of the force used to extract Plaintiff from the car and place her in the police cruiser. However, the law does not clearly establish that the force Officer Pretti used was unreasonable, nor can the Court conclude that a reasonable officer would know such force violated the Fourth Amendment.  The Court is not prepared to go to the extreme of parsing how hard a "yank" or how heavy a "slam" must be, absent serious injury, before an officer is liable for using excessive force.  Even if Officer Pretti made a mistake as to how much force was required, it was a reasonable mistake and he is entitled to qualified immunity.  See Saucier, 533 U.S. at 205. The alleged force used against Plaintiff pales in comparison to cases in which courts found the police used excessive force. See, e.g., Couden v. Duffy, 446 F.3d 483, 496-97 (3d Cir. 2006) (force was excessive where four officers jumped on a cooperative suspect, sprayed him with mace and pointed firearms at his head); Rivas v. City of Passaic, 365 F.3d 181, 198-200 (3d Cir. 2004) (finding excessive force where officers beat and suffocated a suspect who was in the midst of a seizure); Solomon v. Auburn Hills Police Dep't, 389 F.3d 167, 174-75 (6th Cir. 2004) (police shoved unresisting victim into a display case and fractured her arm by yanking it behind her back.)  Officer Pretti is entitled

25

to qualified immunity for the force he used to apprehend and detain Plaintiff.

b. Tightening of Handcuffs

Plaintiff alleges that Officer Pretti applied handcuffs to her wrists so tightly that it amounted to excessive force. Plaintiff states she was removed from her daughter Kelly's car and within two minutes, she was handcuffed and seated in Officer Pretti's police cruiser. (Def.'s Mot. Ex. A, at 105.) Ms. Clifton claims she waited in the police cruiser for an additional five minutes, in handcuffs, while Officer Pretti gave Kelly a parking citation. Id. at 116. Ms. Clifton was then transported to the Ridley Township Police Station, which took approximately three to four minutes. Id. at 118. Plaintiff was placed in a holding cell and only after Officer Pretti left the station, Plaintiff mentioned for the first time that the handcuffs were too tight. Id. at 121-24.

Excessively tight handcuffs have been found to constitute excessive force in some cases. See Kopec, 361 F.3d at 777-78. Furthermore, the right to be free from the use of excessive force in the course of handcuffing is clearly established and is not defeated by qualified immunity. Id. at 778. Plaintiff was not subject to excessive force. In Kopec v. Tate, the plaintiff was handcuffed and immediately lost feeling in his right hand. 361

26

F.3d at 774.  He fell to the ground and begged the officer to loosen the handcuffs.  Id.  After ten minutes, as the plaintiff groaned in excruciating pain, the officer finally loosened the handcuffs.  Id.  As a result the plaintiff suffered nerve damage that required several surgeries.  Id.  Under these extreme circumstances, the Third Circuit found the plaintiff was the victim of excessive force.  See id. at 777.  The Third Circuit cautioned that the opinion "should not be overread as we do not intend to open the floodgates to a torrent of handcuff claims," and therefore the Court construes Kopec narrowly.  Id.  Ms. Clifton does not allege her pain was so obvious as to be visibly apparent, nor does she allege she ever told Officer Pretti the handcuffs were too tight around her wrists.  Additionally, Ms. Clifton does not allege injuries as severe as those in Kopec.

   Ms. Clifton faced a situation analogous to the circumstances in Gilles v. Davis, 427 F.3d 197 (3d Cir. 2005).  In Gilles, the plaintiff was arrested for disorderly conduct and remained in handcuffs for three or four hours.  Id. at 202.  During that time, the plaintiff complained about the pain to several police officers but he otherwise displayed no "obvious visible indicators of [] pain."  Id. at 208.  The plaintiff sought a medical evaluation but received no treatment.  Id.  The court held that the plaintiff was not subject to excessive force.  Id. The record is unclear how long Ms. Clifton was in handcuffs but

it could have been as long as three or four hours.  Ms. Clifton
admits that she never told Officer Pretti the handcuffs were too
tight, although she allegedly told officers working at the Ridley
Township Police Station.  Additionally, Plaintiff does not allege
she exhibited "obvious visible indicators of pain."  Under these
circumstances, Gilles is controlling and the Court must conclude
that Officer Pretti did not use excessive force when he
handcuffed Plaintiff.  Defendant Officer Pretti is granted
summary judgment against Plaintiff's Fourth Amendment claim of
excessive force.

*4. Fourth Amendment Malicious Prosecution*

      Plaintiff alleges a malicious prosecution claim against
Officer Pretti.  A malicious prosecution claim under the Fourth
Amendment has five requirements: (1) the defendant initiated a
criminal proceeding; (2) the criminal proceeding ended in the
plaintiff's favor; (3) the defendant initiated the proceeding
without probable cause; (4) the defendant acted maliciously or
for a purpose other than bringing Plaintiff to justice; and (5)
the plaintiff suffered a deprivation of liberty consistent with
the concept of seizure as a consequence of a legal proceeding.
Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007) (citing Marasco,
318 F.3d at 521).  "A claim for false arrest, unlike a claim for
malicious prosecution, covers damages only for the time of

28

detention until the issuance of process or arraignment, and not more." Id. (quoting Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998)); accord Heck v. Humphrey, 512 U.S. 477, 484 (1994).  Therefore, Plaintiff's malicious prosecution claim covers damages for the time following the issuance of process. In this case, legal proceedings began when Officer Pretti issued Ms. Clifton a citation for disorderly conduct.  Onerous pretrial restrictions, such as posting bail or submitting to travel restrictions, may amount to a deprivation of liberty sufficient to meet the fifth element of malicious prosecution.  See, e.g., Gallo v. City of Philadelphia, 161 F.3d 217, 222-23 (3d Cir. 1998).

Although Plaintiff was certainly seized prior to the issuance of process, she was not seized any time thereafter.  On September 15, 2007, Plaintiff was detained at the Ridley Township police station following her arrest.  Later that evening, Plaintiff was issued a citation and released from custody. Plaintiff appeared in court on October 9, 2007 for trial and was adjudicated not guilty on November 5, 2007.  (Compl. ¶ 22.)  The only seizure occurred on September 15, 2007, prior to her receipt of a citation.  There is no evidence in the record that Plaintiff was seized following the issuance of the citation.  Compulsory attendance at trial, by itself, does not meet the deprivation of liberty requirement.  See Bingaman v. Bingaman, No. 4:07-CV-2352,

29

2009 WL 2424641, at *4 (M.D. Pa. Aug. 5, 2009) ("required attendance at pretrial proceedings and her eventual bench trial is not sufficient to establish the type of deprivation required to state a constitutional malicious prosecution claim."); Kokinda v. Breiner, 557 F. Supp. 2d 581, 591-92 (M.D. Pa. 2008) (post-arrest seizure for several hours, without more, was insufficient deprivation of liberty); Shepherd v. Ambrosino, Civ. No. 07-4968 (MLC), 2007 WL 4233030, at *2 (D.N.J. Nov. 29, 2007); Bristow v. Clevenger, 80 F. Supp. 2d 421, 429-30 (M.D. Pa. 2000).  Summary judgment is granted for Officer Pretti against Plaintiff's Fourth Amendment malicious prosecution claim.

## B. Plaintiff's § 1983 Claims Against the Borough of Eddystone

Plaintiff asserts a claim of municipal liability against the Borough of Eddystone.  Eddystone is liable, according to Plaintiff, for Officer Pretti's violations of Plaintiff's First and Fourth Amendment rights by: (i) failing to adequately train and supervise Officer Pretti and (ii) ratifying an Eddystone Police Department custom or practice of illegally arresting individuals.  (See Compl. ¶ 28.)  Plaintiff has failed to allege facts sufficient to defeat a motion for summary judgment.

In a § 1983 suit against a local governing body, the governing body may only be liable if the allegedly unconstitutional action "implements or executes a policy

30

statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). Such actions can take two forms: an official policy or a custom or usage. Id. at 691. "Although not authorized by written law, [] practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." Id. (citation omitted). Inadequate police training--or the absence of training altogether--may be the basis for a § 1983 suit if the deficient training amounts to "deliberate indifference" to the rights of the person aggrieved. See City of Canton v. Harris, 489 U.S. 378, 388 (1989). The municipal policy must be the "moving force [behind] the constitutional violation." Id. at 389 (alteration in original) (quoting Polk Cnty. v. Dodson, 454 U.S. 312, 326 (1981)). To attach liability, the failure to train must be a "deliberate" and "conscious" choice by the municipality. See id. Plaintiff has not alleged any facts that suggest Eddystone showed a deliberate indifference to the First and Fourth Amendment rights of its citizens. No facts in the record indicate Eddystone's officer training program was inadequate or that such training was the "moving force" behind Plaintiff's alleged constitutional injury. No facts support a causal relationship whatsoever between Plaintiff's alleged injury and the actions of Eddystone policymakers.

Plaintiff has alleged a single incident of First and Fourth Amendment violations but otherwise points to no other incidents. Although most cases involve a pattern of violations, a narrow exception exists where the need for more training was "so obvious" and the inadequacy was "so likely" to result in violations of constitutional rights, that policymakers "can reasonably be said to have been deliberately indifferent to the need." Harris, 489 U.S. at 390.  The Supreme Court hypothesized, for example, that equipping officers with firearms and not training them on the constitutional limits of deadly force would demonstrate an obvious need for adequate training.  Id. at 390 n.10; see also Berg v. County of Allegheny, 219 F.3d 261, 275-76 (3d Cir. 2000) (finding deliberate indifference where a county had no protective measures to prevent erroneous warrants from being executed).  The Court sees no reason to find that Plaintiff has met this high burden; Plaintiff has given the Court no indication of Eddystone's alleged training deficiencies. Plaintiff has failed to prove the essential elements of its claim and therefore cannot survive a motion for summary judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Plaintiff also alleges Eddystone acquiesced to or ratified a police custom of permitting unconstitutional arrests.  Plaintiff has the burden to show that "an official who has the power to make policy is responsible for either the affirmative

proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). Plaintiff has not identified an official with policymaking power, an affirmative proclamation of a policy, nor evidence of acquiescence in a custom. Furthermore, Plaintiff has not met her burden to prove a municipal practice was the proximate cause of her injuries. See id. Plaintiff's unsubstantiated claim cannot survive summary judgment. See Watson v. Abington Twp., 478 F.3d 144, 156-57 (3d Cir. 2007). Defendant Eddystone is entitled to summary judgment on all claims of municipal liability.

C. Pennsylvania Malicious Prosecution

        Plaintiff accuses Officer Pretti of malicious prosecution under Pennsylvania common law. The law has four elements: (1) the institution of legal proceedings against the plaintiff, (2) without probable cause, (3) with malice, and (4) the proceedings terminated in favor of the plaintiff. See Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010). The record unequivocally reflects--and the parties agree--that Officer Pretti instituted legal proceedings against Plaintiff when he issued her a citation for disorderly conduct. Next, as the Court has already found, a genuine issue of material fact exists as to

33

whether Officer Pretti had probable cause to arrest Ms. Clifton.[7]
"Malice has been stated to include ill-will in the sense of
spite, the use of a prosecution for an extraneous, improper
purpose, or the reckless and oppressive disregard of the
plaintiff's rights." Bristow v. Clevenger, 80 F. Supp. 2d 421,
435 (M.D. Pa. 2000) (quoting Lee v. Mihalich, 847 F.2d 66, 70 (3d
Cir. 1988)).  Malice may be "inferred from the absence of
probable cause." Id.  In light of the facts favorable to
Plaintiff, she was arrested without probable cause, and so a jury
could find that Officer Pretti acted with malice.  Lastly, the
record indicates that the legal proceedings terminated in
Plaintiff's favor; a court found her not guilty of disorderly
conduct.  A reasonable jury could conclude that Officer Pretti
maliciously prosecuted Ms. Clifton.

Officer Pretti raises the defense of official immunity under
Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa.
Cons. Stat. Ann. §§ 8541-64.  The statute reads, in pertinent
part:

---

[7]In contrast to the Court's § 1983 analysis where probable cause is a
question of fact, under Pennsylvania law, probable cause is a question of law
for the court to decide.  See Bristow, 80 F. Supp. 2d at 433-34 (citing
Simpson v. Montgomery Ward & Co., 46 A.2d 674, 675 (1946)); see also Douris v.
Cnty. of Bucks, No. CIV.A. 99-3357, 2001 WL 767579, at *12 (E.D. Pa. July 3,
2001).  Nonetheless, where probable cause depends on disputed facts, the court
may wait to make its probable cause determination after the jury has made its
findings.  Id. at 434 (citing Simpson, 46 A.2d at 678-79; Thomas v. E.J.
Korvette, Inc., 476 F.2d 471, 475 (3d Cir. 1973)).  Given the parties' vastly
disparate recollections of the factual circumstances surrounding Plaintiff's
arrest, the Court must defer its finding of probable cause until a jury has
made its factual findings.

> In any action brought against an employee of a local
> agency for damages on account of an injury to a person or
> property based upon claims arising from, or reasonably
> related to, the office or the performance of the duties
> of the employee, the employee may assert on his own
> behalf, or the local agency may assert on his behalf: .
> . . [t]he defense that the conduct of the employee which
> gave rise to the claim was authorized or required by law,
> or that he in good faith reasonably believed the conduct
> was authorized or required by law.

Id. § 8546.  Officer Pretti is no doubt legally authorized to

issue a citation where the issuance of that citation is supported

by probable cause.  However, Officer Pretti is not legally

authorized to issue citations to people for whom there is not

probable cause to believe they committed a crime.  Assuming the

facts most favorable to Plaintiff, the Court cannot find that

Officer Pretti had a good faith reasonable belief that he was

permitted to cite Plaintiff for disorderly conduct.  Although the

doctrine of qualified immunity is not necessarily coextensive

with Pennsylvania's official immunity doctrine, the former is

instructive in applying the latter.  As explained in the Court's

qualified immunity analysis, a jury could find that a reasonable

officer would have known that arresting Plaintiff without

probable cause would violate her clearly established

constitutional rights.  See supra Part III.A.1.d.  By extension,

a reasonable officer could not believe he was "authorized or

required by law" to arrest Plaintiff and issue her a citation.[8] A reasonable officer would know such an arrest and prosecution would be unconstitutional.

If the jury finds that Officer Pretti acted maliciously, it would negate any assertion he acted in good faith.  A finding of actual malice or willful misconduct would statutorily nullify Officer Pretti's official immunity.  See 42 Pa. Cons. Stat. Ann. § 8550; accord Pelzer v. City of Philadelphia, 656 F. Supp. 2d 517, 539 (E.D. Pa. 2009).  Plaintiff has plead facts that could lead a reasonable jury to find that Officer Pretti prosecuted Plaintiff in the absence of good faith to retaliate against her. In conclusion, the Court denies Officer Pretti summary judgment on Plaintiff's common law malicious prosecution claim.

## IV. Conclusion

For the aforementioned reasons, Defendants' Motion for Summary Judgment is granted in part and denied in part.

---

[8]If Pennsylvania law authorized or required Officer Pretti to make arrests without probable cause, such a law would be unconstitutional.  Officer Pretti's good faith reliance on a law that unbeknownst to him was unconstitutional, could potentially afford him official immunity.  The Court need not reach the issue.  Defendants have not suggested this is the case. Furthermore, the Pennsylvania courts have determined that the disorderly conduct statute under which Plaintiff was charged, 18 Pa. Cons. Stat. Ann. § 5503, is constitutional.  See Commonwealth v. Bryner, 652 A.2d 909, 911 (Pa. Super. Ct. 1995) (citing Commonwealth v. Mastrangelo, 414 A.2d 54 (Pa. 1980), cert. denied, 449 U.S. 894).  The Court, in turn, construes the statute as only authorizing arrests that are constitutional, i.e. arrests supported by probable cause.